# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MIKE JONES a/k/a Rahim Payne, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0:06-2432-MBS-BM |
| ) | |
| v. ) | |
| ) | |
| LT. ANCRUM, SGT. DEGNER,, ) | **REPORT AND RECOMMENDATION** |
| CPT. GATHERS, sued in their ) | |
| official and individual capacity; ) | |
| CHARLESTON COUNTY ) | |
| DETENTION CENTER, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was an inmate at the Charleston County Detention Center, alleges violations of his constitutional rights by the named Defendants.

Plaintiff filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 5, 2006. Defendants filed a memorandum in opposition to Plaintiff's motion on December 22, 2006, and also filed their own motion for summary judgment. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court advising Plaintiff of the importance of the Defendants' motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion might be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion (styled "motion for trial by jury") on February 8, 2007, and Defendants



1

filed a reply memorandum on February 21, 2007. These motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] as follows:

> On June 3, 2006 I entered request to staff forms requesting that someone notarize my legal documents that were drawn up in regards to a complaint I was attempting to file against Charleston County Ctr. for loss of personal property. Numerous request forms were submitted in regards to getting my paperwork notarized and when they final responded, a Sgt. Degner sent unit staff to come retrieve the papers (6-12-06) Sgt. Degner is the same Sgt. who denied me access phone use to call my attorney on 6-11-06. Formal grievance was filed on 6-12-06 as well and yet another request form was submitted on 6-19-06. In response to the request form Sgt. Degner stated: "Your papers were sent to Lt. Ancrum along with your complaint for him to answer." This was a lie because Lt. Ancrum was on vacation at the time and did not return until July. My family even made attempts at locating my paperwork by coming to the jail to speak to Lt. Ancrum. He was unavailable but she left him a note, which he photocopied for me. As of yet my grievance still has not been given relief, papers have not been returned, and I have endured countless retaliation because of filing complaints. I was moved out of my cell and placed in a bull pen and made to sleep on the floor. I am still in the bull pen to this day. They also lost my contact lenses that my wife dropped off for me on 7-25-06. Lt. Ancrum did try to locate the paperwork but to no avail could he find such. Attached to papers were original documents that would have already called for Chas. County to compensate for my property. As a result of the retaliation I endured by being placed in the bull pen (North D), I was lynched by several black males because I refused to give up my personal property.

Plaintiff seeks injunctive relief, as well as monetary damages. See generally, Verified Complaint.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



As an attachment to his motion for summary judgment, Plaintiff has submitted a copy of an inmate request form dated June 11, 2006, wherein he is requesting to have some forms notarized and copied, and to make legal calls to an attorney. This form notes the receiver as being Sgt. Degner, with the action taken as follows: "I'll inform Lt. Gallant about your request for a notary. However all phone calls are conducted on Sunday evenings in Disc. Seg. [Disciplinary Segregation]".

In a second inmate request form dated June 19, 2006, Plaintiff wants to know "what is going to be done in regards to my missing property....I feel as if someone is holding my legal papers in vain. Please look into this matter because my attorney will be coming to see me real soon and I need my paperwork." This document was again reviewed by Degner, who noted the following action taken: "Your papers were sent to Lt. Ancrum along with your complaints for him to answer."

Plaintiff has also attached two grievance forms to his motion, the first being dated June 12, 2006. In this document, Plaintiff is complaining about not having his legal papers notarized and photocopied, and that no one has made an effort to return his legal papers to him. This grievance form shows that it was received by Sgt. Degner on June 12, 2006, who responded: "I r'cvd. your request this morning...and gave Lt. Ancrum your information." The second inmate grievance form is stamped "received" on August 24, 2006, and Plaintiff complains about not obtaining a work detail within his unit at the jail. Plaintiff complains that he wants to receive some monetary compensation for his labor, and also to relieve stress. He also states that he has "continuously been asking staff about my missing paperwork." There is no response on this document, which is dated six days prior to the filing of Plaintiff's Complaint.

In support of their motion for summary judgment, the Defendants have submitted



numerous affidavits and other exhibits. The Defendant Degner has submitted an affidavit wherein he attests that he is a sergeant at the Charleston County Detention Center, and that at the time relative to Plaintiff's allegations he was the supervisor for the Tactical Team operating in Unit 1-A, which is the segregation unit for inmates who are a threat to facility security. Degner attests that he has no independent recollection of any involvement with the Plaintiff, but from his review of the Detention Center's records he received a request form from the Plaintiff on June 12, 2006 and responded that same day. Degner attests that inmates in disciplinary segregation (such as the Plaintiff) are only permitted to make phone calls on Sunday evening, and that if an inmate needs to reach his attorney, he is to contact a friend or family member, who can then in turn contact the attorney and let him or her know the inmate wants to speak with them. With respect to Plaintiff's alleged documents, Degner attests that he cannot tell from his review of the records whether he received documents from a housing unit officer and took them to Lt. Gallant to notarize, or if he just notified Gallant of the request. Degner attests that if Gallant was not able to notarize documents, and he [Degner] had possession of them, he would have taken them to Lt. Ancrum. However, Degner attests that he cannot recall whether he ever had possession of Plaintiff's legal documents.

Degner attests that he is not a licensed notary public and cannot notarize documents for inmates, and that his regular practice and habit is to either hand such documents to Lt. Ancrum or to leave them on his keyboard if he is not in his office. In any event, Degner attests that at the time of Plaintiff's June 11, 2006 request, he did not have possession of Plaintiff's forms, and did not have any knowledge as to where they were.

With respect to Plaintiff's inmate request form dated June 19, 2006, Degner attests

4



that he received this form on June 20 and responded the same day. Plaintiff wanted to know about his missing papers and was requesting a response from Cpt. Gathers, and he [Degner] advised Plaintiff that his papers had been sent to Lt. Ancrum for him to respond. Degner attests that at the time of Plaintiff's June 19 request, he did not have possession of Plaintiff's papers and did not have any knowledge as to where they were.

Finally, Degner attests that at no time did he do anything to retaliate against Plaintiff for filing grievances or requests, and that he at all times followed the proper procedures for the performance of his duties and adhered to all applicable laws. See generally, Degner Affidavit.

The Defendant Ancrum has also filed an affidavit wherein he attests that he is lieutenant at the Detention Center, and that part of his duties is to accept and respond to inmate inquiries and grievances. Ancrum attests that he does not have any independent recollection of any involvement with the Plaintiff, but that he is a licensed notary public and is able to notarize documents for inmates, although he is not required to do so. Ancrum attests that he does regularly notarize documents for inmates, and that if he is at his desk when documents are brought in, and the delivering officer wants to wait, he will notarize them and return them to the officer. Ancrum attests that if the officer does not want to wait, he will accept the documents and notarize them, and will then deliver the documents to the box for the unit where the inmate is housed. The housing officers pick up documents for the inmates at that location and distribute them back to the inmates.

Ancrum attests that if he is not in his office when an officer delivers documents to be notarized, they are put on his keyboard or in his chair, and he notarizes them when he returns. He then delivers the documents to the box for the unit where the inmate is housed. Ancrum further



5

attests that if notarized documents are to be copied, the housing officers will make the copies when they pick them up from the box. Ancrum attests that he may have notarized the documents at issue in this case, but that he does not keep copies of documents he has notarized and does not keep any record of the documents that he notarizes. Ancrum attests that he has no memory of receiving or notarizing these particular documents.

Ancrum attests that he was on duty June 12 -15, 2006, and did not start his vacation until June 16, returning shortly after July 4, 2006. Ancrum attests that, while Plaintiff alleges he received a note from Plaintiff's family, he has no recollection of such, nor does he have any copy of any such note. Ancrum attests that he was never involved in locating the Plaintiff's allegedly missing legal documents or personal property.

Ancrum attests that, from a review of Plaintiff's file, it is apparent that Plaintiff was in disciplinary segregation for a portion of June 2006, and that after he was released from disciplinary segregation he was moved to the north wing, which is a dormitory style housing unit. Ancrum attests that this move would have had nothing to do with any retaliation for grievances filed by the Plaintiff, and that at no time did he do anything to retaliate against the Plaintiff for filing grievances or requests. Ancrum attests that he did not know, or know of, this Plaintiff prior to his involvement with the Plaintiff during his period of incarceration at the Charleston County Detention Center, that he followed the proper procedures for the performance of his duties, and adhered to all applicable laws. See generally, Ancrum Affidavit.

The Defendant Gathers has submitted an affidavit wherein he attests that he is a captain at the Charleston County Detention Center, and that his job duties include dealing with areas of inmate housing. Gathers attests that as part of his duties he also accepts and responds to inmate

6



inquiries and grievances, that he has reviewed the records of the Plaintiff, and does have some independent recollection of being involved with the Plaintiff. Gathers attests that he is a licensed notary public, and is able to notarize documents for inmates, although he is not required to do so. Gathers further attests that, as a captain, he generally does not notarize documents for inmates.

Gathers attests that he has reviewed Plaintiff's inmate request form dated June 19, 2006, and has no information about this and does not know what information the Plaintiff was waiting on from him. Gathers attests that at one point during June 2006 he was making rounds of the housing units, and spoke with the Plaintiff. Gathers attests that Plaintiff asked him to check into getting his legal papers returned to him and getting some personal property that he said he was missing returned to him, and that he told the Plaintiff he did not have Plaintiff's legal papers and had no information about them, but that he would check into the issue. Gathers attests that he then asked Lt. Gallant to look into the issue of Plaintiff's personal property, but that he [Gathers] never had possession of any of the Plaintiff's legal papers.

Gathers attests that, based on a review of Plaintiff's file, it appears that Plaintiff was in disciplinary segregation for a portion of June 2006, and was thereafter released to the north wing, which is a general population location. Gathers attests that Plaintiff being placed in the north wing following his release from disciplinary segregation had nothing to do with retaliation for any grievances, that he at all times followed proper procedures for the performance of his duties, and adhered to all applicable laws. See generally, Gathers Affidavit.

The Defendants have also submitted an affidavit from Marvin Gallant, who attests that he is a lieutenant at the Charleston County Detention Center. Gallant attests that he has reviewed the records of the Plaintiff and has little independent recollection of his involvement with

7



him. Gallant attests that he is a notary public for South Carolina, although he is not required to notarize documents for inmates. Gallant attests that he does not specifically remember whether he received Plaintiff's legal documents from Sgt. Degner, but that he did not have his notary stamp and therefore, if he did receive them, he would have given them back to Degner to deliver to Lt. Ancrum.

Gallant attests that he received an inmate request form from the Plaintiff on August 29, 2006 regarding the location of his personal property, and was requested to check into Plaintiff's request by Cpt. Gathers. Gallant attests that he spoke with Lt. Tice, who advised him that Plaintiff's family had retrieved his personal belongings at the front desk. Gallant attests that attached to his affidavit is a copy of the inmate request form, inmate property maintenance form, and receipt for property. Gallant attests that he thereafter advised the Plaintiff on the inmate request form that his family had retrieved his belongings. Gallant attests that he [Gallant] followed the proper procedures for the performance of duties, and that at all times adhered to all applicable laws. See generally, Gallant Affidavit, with attached Exhibits.

Finally, the Defendants have submitted numerous documents relating to the period of Plaintiff's incarceration at the Detention Center, including copies of his booking report, a request by Plaintiff to be removed from protective custody dated July 7, 2006, copies of various medical forms, and other documents.

As attachments to his response to the Defendants' motion for summary judgment, Plaintiff has submitted a copy of the inmate request form from August 2006, in which Lt. Gallant responded under action taken: "Your family member has signed and picked-up your property that you are requesting us to find. This was handled in the lobby by the cash office." Plaintiff has also submitted several additional forms and documents relating to his not being assigned to a work unit

8



detail, being denied a request for "educational books", as well as other documents discussing mail receipt and recreation privileges.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Plaintiff has brought this case pursuant to § 1983, which is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. See Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973). However, to the extent Plaintiff has intended to name the Charleston County

9



Detention Center as a party Defendant in this case, the Detention Center itself is a building or facility, and as such is not subject to suit under § 1983. *Cf.* Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969) [California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983]; Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D.Pa. 1976); see generally Tyler v. Sullivan, No. 95-1232, 1996 WL 195295 at **1 (10th Cir. Apr. 22, 1996) ["The [district] court dismissed the detention facility as a defendant, finding that the facility, a building owned and operated by the county, is not a person or legally created entity capable of being sued."]; Preval v. Reno, 57 F. Supp.2d 307, 310 (E.D. Va. 1999) ["[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."] aff'd in part, modified in part on other grounds, vacated in part on other grounds, 203 F.3d 821 (4th Cir. 2000); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ["Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."]. Therefore, this Defendant is entitled to dismissal.

## II.

Plaintiff has also included claims for declaratory and/or injunctive relief in his Complaint. However, since it is readily apparent that Plaintiff is no longer incarcerated at the Charleston County Detention Center, his requests for declaratory and/or injunctive relief are moot. See Court Document No. 19 [Notice of Change of Address]. See also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. *Cf.* Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer

10



'live' or the parties lack a legally cognizable interest in the outcome."]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983); Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Therefore, any claims for declaratory and/or injunctive relief should be dismissed.

### III.

Plaintiff's claim for monetary damages survives his transfer to another institution. Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Further the three individual Defendants are all subject to suit under § 1983 for damages in their individual capacities. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). However, even though these Defendants are subject to suit for damages under § 1983, the undersigned finds and concludes after review of the arguments and exhibits submitted to this Court that Plaintiff has failed to submit sufficient evidence to create a genuine issue of fact as to whether his constitutional rights were violated, and that this case should therefore be dismissed.

In his verified Complaint, Plaintiff complains about not timely receiving papers he alleges he submitted to be notarized, and also about not being able to call his attorney on June 11, 2006. Plaintiff also asserts that his transfer out of his cell and placement back in the general population was retaliatory. No constitutional violation is demonstrated in these allegations, or in the exhibits Plaintiff has attached to his filings. First, his claim of retaliation is nothing more than a conclusory allegation, with no factual or evidentiary support sufficient to establish a constitutional violation or to survive summary judgment. See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Papasan

11



v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curium) [speculative and conclusory allegations cannot support retaliation claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at **1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights].

    Claims of retaliation are generally treated with skepticism by Courts because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996), (citing Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Here, the action Plaintiff complains about was not even in response to some type of misconduct. Rather, it is based on Plaintiff's transfer from disciplinary segregation back to the general population. While Plaintiff generally ascribes retaliatory motives to this transfer, as well as to some other actions purportedly taken by the Defendants, none of the affidavits or exhibits provided to the Court, either by the Defendants *or* by the Plaintiff, constitute *evidence* to support Plaintiff's claim that he was being retaliated against. See Harris v. Ostrout, 65

12



F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]. Therefore, this claim is without merit and should be dismissed.

Plaintiff's remaining allegations also fail to set forth a viable constitutional claim. Defendants' evidence shows, and Plaintiff does not dispute, that the day Plaintiff asked to call his attorney was not the day set aside for such phone calls for inmates in disciplinary segregation. Plaintiff does not allege that he was denied the right to contact his attorney, but only that he was denied the right to call his attorney when he wanted to call him. Plaintiff was free to write to his attorney, if he needed to do so, or he could have asked family members to contact his attorney. Jail inmates do not have a constitutional right to use a phone anytime they desire to do so, and while Plaintiff may have been inconvenienced by the jail's phone policy, he has failed to show how this policy resulted in a violation of his constitutional rights. Aswegan v. Henry, 981 F.2d 313, 314 (8th Cir. 1992) ["Although prisoners have a constitutional right of meaningful access to the courts, prisoners do not have a right to any particular means of access, including unlimited telephone use"], citing Bounds v. Smith, 430 U.S. 817, 823, 832 (1977); Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989) [prisoner has no right to unlimited telephone usage]; United States v. Footman, 215 F.3d 145, 155 (1st Cir. 2000) ["Prisoners have no per se constitutional right to use a telephone..."]; see also Fillmore v. Ordonez, 829 F.Supp. 1544, 1563-1564 (D.Ka. 1993) ["The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions"], aff'd, 17 F.3d 1436 (10th Cir. 1994).

In any event, Plaintiff's phone usage claim, as well as his claim concerning his papers and documents which he contends were never returned to him, fail because Plaintiff has presented

13



no evidence to show a denial of access to the courts, or of any injury incurred as a result of any such alleged denial of access. In order to proceed with his claim for denial of access to the courts, Plaintiff must present evidence to show both a denial of court access *and* some prejudice resulting from the denial of access. Strickler v. Waters, 989 F.2d 1375, 1382-1383 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993); Magee, 810 F.2d at 452 ["courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained."]; Shango v. Jurich, 965 F.2d 289, 293 (7th Cir. 1992). Plaintiff has failed to show that the loss of his papers (assuming this allegation to be true for purposes of summary judgment) or his inability to use a phone denied him court access, or prejudiced him with respect to any court proceeding as required by the applicable caselaw. Plaintiff does not even identify what court proceeding may have been at issue, much less present any evidence to show how a court proceeding was effected by the Defendants' alleged conduct.[3] Plaintiff's general and conclusory allegations that he suffered harm because of the Defendants' conduct, standing alone, are not sufficient to maintain this claim. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); White v. Boyle, 538 F.2d 1077, 1079-1080 (4th Cir. 1976); Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993), cert. denied, 510 U.S. 902 (1993); Proffitt v. United States, 758 F.Supp. 342 (E.D.Va. 1990); see Magee, 810 F.2d at 452 ["courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained."]. Therefore, Plaintiff's claim against the Defendants based on lack of access to the courts is without

---

[3]Plaintiff does at one point in his motion for summary judgment identify one of the papers purportedly lost as having been a "complaint to be sent to the Court fo Common Pleas." However, even assuming such a document was lost, no explanation is provided for why a second copy could not have been sent, or indeed whether one *was* sent.



merit and should be dismissed.

Finally, to the extent Plaintiff has intended to assert a claim based on the Defendants allegedly having lost his personal property, this allegation also fails to state a viable constitutional claim for consideration by this Court. Even if this Court assumes Plaintiff's allegation that his personal property was lost or mishandled by the named Defendants to be true, such conduct does not amount to a constitutional claim, as he has available state court remedies to pursue this claim. See S.C.Code Ann. § 15-69-10, et. seq.. Because South Carolina has an adequate post-deprivation remedy for an alleged deprivation of property, Plaintiff's due process rights were not violated, even if it is assumed that one or more of the Defendants lost or mishandled his personal property. Hudson v. Palmer, 468 U.S. 517-518 (1984); McIntyre v. Portee, 784 F.2d 566-567 (4th Cir. 1986); see also Ricci v. Paolino, No. 91-1994, 1992 WL 63521 at **2 - **3 (1st Cir. April 1992). *Cf.* Longmoor v. Nilsen, 329 F.Supp.2d 289 (D.Conn. July 23, 2004) ; Bigbee v. United States, 359 F.Supp.2d 806, 809-810 (W.D.Wis. Mar. 15, 2005).

Although prisoners may pursue property deprivation claims against state officials under § 1983 under some circumstances, such as where the deprivation is pursuant to an official policy, such is not the case under the facts presented here. There is no allegation, nor any evidence to show, that any jail policy allowed correctional officers to mishandle Plaintiff's personal property. In fact, Plaintiff specifically alleges that the Defendants' handling of his property *did not* follow jail policies and procedures. See Lawrence v. Swanson Inmate Commissary Services, No. 97-6429, 1998 WL 322671 (4th Cir. June 4, 1998) [deprivation claims as a result of negligence fail to set forth a claim of constitutional magnitude]; *cf.* Davidson v. Cannon, 474 U.S. 344, 347 (1986); Daniels v. Williams, 474 U.S. 327, 331 (1986). Hence, if Plaintiff has intended to assert such a claim in this

15



lawsuit, it is without merit and should be dismissed. Wagner v. Higgins, 754 F.2d 186, 192 (6th Cir. 1985) [since plaintiff had a state law claim, there was no § 1983 claim where property allegedly retained as evidence was allegedly lost]; Meyer v. Miro, No. 01-4260, 2003 WL 23198856 (D.S.C. 2003) (citing Yates v. Jamison, 782 F.2d 1182 (4th Cir. 1986)).

### **Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

March 15, 2007

16



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

